UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTERN TOWBOAT COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>VIGOR MARINE, LLC,<br><br>Defendant. | No. C20-0416-RSM<br><br>ORDER DENYING DEFENDANT VIGOR MARINE'S MOTION TO STAY PROCEEDINGS AND MOTION TO EXTEND CASE DEADLINES |

## I. INTRODUCTION

This matter comes before the Court on Defendant Vigor Marine, LCC ("Vigor")'s Motion to Stay Proceedings, Dkt. #31, and Motion to Extend Discovery and Pre-Trial Deadlines, Dkt. #28. Plaintiff Western Towboat Company opposes both motions. Dkts. #34, #35. For the reasons set forth below, the Court DENIES both of Vigor's motions.

## II. BACKGROUND

### A. Factual Background

This admiralty and maritime action arises out of the sinking of Vigor's Drydock YFD 70 ("Drydock") on or about October 26, 2016 in Monterey Bay. Dkt. #1 at ¶¶ 1-2. Vigor hired Plaintiff Western Towboat Company ("Western") to provide tugboat services for Vigor's

Drydock from Seattle, Washington, to Ensenada, Mexico. *Id.* at ¶¶ 5-8. Parties entered into an agreement ("the Standard Towage Agreement") setting forth parties' obligations and agreed-upon rates for the Drydock tow.

The tow commenced on October 17, 2016 from Seattle. *Id.* at ¶¶ 9-12. On October 25, 2016, when the tow was near the entrance of the San Francisco Bay, the Drydock began to take on water and list. While parties dispute the facts surrounding the tow's chartered course after leaving San Francisco Bay, Western proceeded to tow the Drydock towards Monterey Bay. That course took the tow into the Monterey Bay National Marine Sanctuary ("the Marine Sanctuary") and, on October 26, 2016, the Drydock sank in the Marine Sanctuary. After the Towboat sank, Vigor was informed by the U.S. National Oceanic and Atmospheric Administration ("NOAA") that Vigor may be liable for remediation and related fines for the Drydock's sinking in the Marine Sanctuary. At the time of filing this action, NOAA had not rendered any report or conclusions as to Vigor's liability for the sinking of the Drydock or its removal from the Marine Sanctuary. However, Vigor has refused to pay Western for towage services rendered under the Standard Towage Agreement.

In November 2016, NOAA informed Vigor of its determination that the Drydock sank .92 miles within the Marine Sanctuary. *Id.* at ¶ 13. In July 2017, NOAA identified an "anomaly" in the Marine Sanctuary near the location where the Drydock sank and asked the potentially responsible parties to cooperate in funding a research voyage to survey the wreckage. Although NOAA cancelled the initial research voyage, it offered parties alternatives to help assess potential damages to natural resources. *Id.* at ¶¶ 16-17. To save costs, Vigor hired its own research vessel to assess the damage, which confirmed that the Drydock sank in the Marine Sanctuary where it damaged it submerged lands, surrounding habitat, and possibly

unique deep-sea flora and fauna. Vigor argues that by June 2019, "parties understood that NOAA would seek to recoup costs, assess penalties, and assert claims against Western and Vigor" in connection with the Drydock's sinking. *Id.* at ¶ 19. On June 21, 2019, parties entered into an agreement to toll all applicable limitation deadlines "[t]o allow NOAA to finalize its assessment, to avoid the necessity of immediate proceedings, and to facilitate further investigation, discussion, and negotiation regarding claims and potential claims" related to the sinking. Dkt. #32-19 at 2 ("the Tolling Agreement"). However, the Tolling Agreement also provided that "[n]otwithstanding paragraph 2 above, the Parties may commence proceedings against each other whenever either Party deems such action appropriate." *Id.* at 3.

On March 16, 2020, Western filed this action against Vigor alleging breach of maritime contract and seeking a declaratory judgment that Western was not responsible for the sinking of the Drydock in the Marine Sanctuary. Dkt. #1 at ¶¶ 17-26. Western contends that the Drydock's sinking was through no fault of Western, which it claims followed Vigor's directions at all times. Vigor denies that it directed or was in a position to direct Western's towing operation and claims that Western failed to exercise reasonable care when it towed the sinking Drydock into the Marine Sanctuary and when it failed to tow the Drydock out before it sank. Dkt. #15 at ¶¶ 10, 33-35. A bench trial is set in this matter for June 28, 2021. Dkt. #14.

**B. Pending Motions regarding Case Deadlines and Trial Date**

On March 30, 2021, Vigor moved to extend discovery and pre-trial deadlines based on recent discovery of relevant, material facts allegedly concealed by Western. Dkt. #28. These facts relate to the deposition of Richard Courtney of Maritimewx, a weather forecaster whom Western was contractually obligated to consult with in connection with the Drydock tow. Dkt. #28 at 2-3. Despite Vigor serving interrogatories and discovery requests on Western seeking

information on the steps Western took to monitor weather conditions before and after the voyage, Western's response did not mention Mr. Courtney. Dkt. #28-1 at ¶ 2. Between February and March 2021, Vigor took depositions of "almost everyone who conceivably have had contact with the relevant tow," including Mr. Courtney and Russell Shrewsbury, one of Western's owners. Dkt. #28 at 3 (citing Dkt. #28-1 at ¶¶ 3-4). However, "no one recalled using [Mr. Courtney's] services in connection with the tow. Finally, with only one Western fact witness remaining, Western's counsel produced "a single email exchange between Western and Mr. Courtney confirming they *had* communicated about weather forecasting." *Id.* at 3 (emphasis added). During the final March 26, 2021 Western deposition, Western's Operations Director described additional emails between Western and Mr. Courtney that Vigor had not previously seen and had not been disclosed to Vigor. Dkt. #28-1 ¶ 5. The deadline for disclosure of expert testimony under Fed. R. Civ. P. 26(a)(2) was March 5, 2021, and discovery closed on April 1, 2021. Dkt. #22 at 1.

On March 26, 2021, parties conferred on the possibility of extending discovery deadlines, but Western refused to agree to an extension. Accordingly, on March 30, 2021, Vigor moved to extend deadlines for (1) disclosure of expert testimony, (2) discovery, and (3) dispositive motions based on Western's failure to disclose facts related to Mr. Courtney's communications with Western, and to allow Vigor's experts time to prepare factually-informed reports. Dkt. #28. Western opposes Vigor's motion. Dkt. #34.

On April 5, 2021, Vigor filed a separate motion to stay proceedings to allow NOAA time to issue its environmental damages and penalty assessment that Vigor claims is "central to resolving the issues raised in the Complaint, Answer, and Counterclaims." Dkt. #31. Western opposes a stay. Dkt. #35.

## III. DISCUSSION

### A. Vigor's Motion to Stay Case

As an initial matter, Vigor's motion to stay is six pages over the twelve-page limit required under LCR 7(d)(2). *See* Dkt. #31. Three days after filing its motion to stay, Vigor sought permission to file an overlength brief. Dkt. #33. No opposition shall be filed unless requested by the court. LCR 7(f)(3). The Court finds opposition briefing from Western unnecessary.

Motions seeking approval to file an over-length motion or brief are disfavored but may be filed subject to certain procedural conditions. LCR 7(f). Here, Vigor's cursory explanation that it "unfortunately overlooked the page length requirements" and "perhaps should have also filed this motion" before moving to stay is woefully insufficient. *See* Dkt. #31 at 1. Vigor offers no explanation as to why unique aspects of this case warrant such a substantial increase in page count, nor any other basis for granting its requested relief. In this circumstance, granting Vigor relief solely because of its failure to consult the local rules would encourage parties to seek forgiveness instead of permission—an outcome that would contradict the very purpose of this district's rules prescribing the length of motions and briefs. Accordingly, the Court DENIES Vigor's untimely motion to file an over-length brief, Dkt. #33. In the interest of addressing Vigor's substantive arguments, the Court will limit its consideration to the final twelve pages of Vigor's motion. *See* LCR 7(e)(6) ("The court may refuse to consider any text, including footnotes, which is not included within the page limits.").

Turning to the merits of Vigor's motion, whether to stay a lawsuit is within this Court's discretion. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1105 (9th Cir. 2005). In considering a stay request, courts weigh the competing interests that will be affected:

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "'[I]f there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Lockyer*, 398 F.3d at 1105 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Here, Vigor seeks a stay pending NOAA's completion of its penalty assessment for damage to the sanctuary caused by the Drydock. Dkt. #31. Vigor contends that a stay is justified because (i) proceeding to trial without the assessment would result in hardship and inequity; (ii) a stay would not cause any damage; and (iii) it would be simpler to try the case at once than to proceed to a partial trial without the assessment. The Court will address each argument in turn.

i. *Hardship or Inequity*

Vigor has not sufficiently demonstrated that hardship or inequity would result absent a stay. As an initial matter, Vigor litigated this case for more than a year without indicating to the Court that resolution of parties' claims depends on NOAA completing its assessment. Although Vigor maintains that parties repeatedly discussed the issue, Dkt. #38 at ¶ 6, neither the joint status report nor parties' stipulations to modify the scheduling order identify NOAA's assessment as a key factor in this case's resolution and potential basis for delay. The fact that

Vigor failed to raise this issue until less than three months before trial undercuts the urgency of its request.

Moreover, it is unclear to the Court what information contained in the NOAA penalty assessment is necessary for resolving parties' claims in this litigation. As Vigor concedes, the NOAA report will not address parties' respective liability for the Drydock's sinking. *See* Dkt. #15 at ¶ 16 ("NOAA has not (and will not) render any report or conclusion concerning liability for the sinking of the Drydock."). While Vigor has failed to precisely identify the subject matter covered by NOAA's penalty assessment, the Court gleans from parties' briefing that NOAA's analysis will address the limited issue of damages to the Marine Sanctuary. On this basis, the penalty assessment does not appear dispositive of or necessary to resolution of parties' contract dispute and related claims. *Cf. Westridge Townhomes Owners Ass'n v. Great Am. Assurance Co.*, No. C16-1011 RSM, 2016 WL 11066578, at *1 (W.D. Wash. Oct. 7, 2016) (Granting 90 day stay to allow Defendants to complete insurance claim investigation and issue coverage decision).

Vigor's arguments to the contrary are unavailing. Vigor claims that it intends to defend Western's breach of contract claim by arguing that Western breached the Standard Tow Agreement when it exposed Vigor to a significant NOAA penalty. Dkt. #31 at 17. However, the precise amount of that penalty is not necessary to resolving whether Western negligently exposed Vigor to a penalty in the first instance. Vigor also argues that it seeks to hold Western responsible for costs Vigor incurred from assisting NOAA with investigation of damage to the Marine Sanctuary, while Western seeks a declaratory judgment that all liability for the sinking of the Drydock lies solely with Vigor. *Id.* at 16. While NOAA's completion of the penalty assessment may affect the final damages amount incurred by the liable party, Vigor has not

sufficiently explained how that amount will assist the Court in resolving the relevant issue here: the liability between Vigor and Western. On this basis, the Court finds that no hardship or inequity would result from proceeding to trial in this matter before NOAA has finalized the total penalty amount regarding damage to the Marine Sanctuary.

ii. *Damage to Western*

Next, the Court finds that a stay in this case pending NOAA's completion of its penalty assessment would cause damage to Western. Western argues that staying this action would require its insurers to continue carrying large reserves so long as the "potential liability to the United States hangs over Western's head," and would prevent Western from moving for summary judgment. Dkt. #35 at 6, n.5. The Court agrees with Vigor that Western has failed to explain how insurers' harm from carrying large reserves will cause harm to Western. However, the Court acknowledges that delaying resolution of parties' claims, which would determine liability between Vigor and Western, subjects Western to protracted uncertainty regarding its responsibility for a potentially large NOAA penalty—an uncertainty that it seeks to resolve through a declaratory judgment. *See* Dkt. #1 at ¶¶ 22-26. Western's claim for declaratory relief distinguishes this case from those where plaintiffs merely sought recovery of monetary damages, and a stay would merely delay such recovery. *See Lockyer*, 398 F.3d at 1110 (Noting that party granted stay in *CMAX, Inc. v. Hall* "sought only damages. It alleged no continuing harm and sought no injunctive or declaratory relief. Delay of CMAX's suit would result, at worst, in a delay in its monetary recovery, with possible (though by no means certain) loss of prejudgment interest.") (citing 300 F.2d 265, 269 (9th Cir. 1962)).

Furthermore, any damage inflicted on Western through further delay is amplified by the fact that Vigor's requested stay would be indefinite. Vigor concedes that NOAA's assessment

"will likely not be ready this year" yet provides no clear timeline on when the assessment may be available. *See* Dkt. #32 at 2. Vigor states that in a phone conversation with NOAA employee Ericka Hailestocke-Johnson, NOAA estimated that the "final phase of NOAA's process" is expected "to take months, not years." Dkt. #38 at ¶ 2. Notwithstanding Vigor's contention that NOAA's penalty assessment is forthcoming, the Court finds that the lack of any concrete timeline by which NOAA will finish its assessment makes Vigor's requested stay, by definition, indefinite. In such circumstances, courts are reluctant to grant stays absent strong justification. *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) ("If a stay is especially long or its term is indefinite, we require a greater showing to justify it."); *see also Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature."). Consequently, without any clear timeline by which NOAA expects to complete its penalty assessment, the indefinite nature of the stay exacerbates damage to Western.

iii. *Simplification of Case*

Finally, Vigor has not sufficiently demonstrated that a stay pending NOAA's completion of its assessment would simplify the issues in this case. Indeed, as the Court explained *supra*, § III(a)(i), Vigor has not clearly identified the information it expects the NOAA penalty assessment to contain and, moreover, how that information will assist the Court in resolving liability between Vigor and Western. To the extent NOAA's penalty assessment impacts damages owed by the liable party, Vigor has not justified staying the entirety of this proceeding until NOAA's penalty amount is finalized. For the same reason, Vigor's argument that the NOAA assessment will impact attorney's fees is unavailing.

The Court also considers that staying the case in its current procedural posture, where two dispositive motions are pending, may needlessly delay resolution of this matter. *Cf. Knapp v. Reid*, No. C15-1769RSM, 2016 WL 561734, at *2 (W.D. Wash. Feb. 12, 2016) (Granting stay where "case is in its infancy. Indeed, no Answer has yet been filed, no trial date is set, and discovery has not yet begun."). Here, in contrast, it is possible that key issues may be resolved on the merits. For all these reasons, the Court is not persuaded that a stay at this stage of the litigation would simplify the issues or support judicial efficiency.

On Reply, Vigor appears to amend its request for a stay: "Vigor does not oppose waiting to stay the case until after discovery is complete and dispositive motions are resolved." Dkt. #37 at 2. Given that parties briefed Vigor's original stay request, i.e. an immediate stay upon completion of discovery, the Court declines to consider Vigor's alternative request at this time. However, it notes that the instant decision does not preclude Vigor from renewing its stay request upon resolution of parties' dispositive motions.

Based on these factors, Vigor has not met its burden of establishing the need for a stay at this stage in the case. Having determined that a stay is not warranted, the Court now turns to Vigor's motion to extend case deadlines, Dkt. #28.

**B. Vigor's Motion to Extend Case Deadlines**

Vigor moves for a time extension pursuant to Fed. R. Civ. P. 6(b), which sets forth the standard for extending time. Dkt. #28. at 1. However, given that Vigor's motion requests modification of the Court's pre-trial deadlines set forth in its scheduling order, *see* Dkt. #22, Vigor's motion is properly analyzed under Fed. R. Civ. P. 16(b).

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause" means that scheduling deadlines cannot be

met despite the party's diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension. If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (internal citations and quotations omitted). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609. Where a motion is made to extend deadlines after the deadlines have expired, the party seeking the extension must show excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B).

At the time Vigor filed its Motion on March 30, 2021, the deadline for disclosure of expert testimony had expired more than three weeks earlier. *See* Dkt. #22 at 1 (Extending deadline for expert witness disclosures and reports to March 5, 2021). Likewise, discovery closed by the time briefing was complete on April 16, 2021. *See id.* (Discovery completed by April 1, 2021). Where a party's Rule 16 motion seeks to reopen discovery, courts consider the following factors to determine whether relief is appropriate: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence. *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997)). "It is 'significant' when a party is seeking to re-open discovery rather than extend the discovery deadline." *Leonard v. Denny*,

No. 12-cv-0915, 2018 WL 2949852, *2 (E.D. Cal. June 13, 2018). "'The difference [between the two types of requests] is considerable' because 'a request for an extension acknowledges the importance of a deadline, [while] a retroactive request suggests that the party paid no attention at all to the deadline.'" *Id.* (alterations in original) (quoting *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1524 (9th Cir. 1990)).

The Court has twice granted parties' stipulated requests to extend the deadlines for disclosure of expert testimony under Rule 26(a)(2) and for completion of discovery. *See* Dkt. #10 (extending deadline for disclosure of expert testimony from December 30, 2020 to February 5, 2021); Dkt. #22 (extending deadline for disclosure of expert testimony from February 5, 2021 to March 5, 2021 and deadline for completion of discovery from March 1, 2021 to April 1, 2021). Nevertheless, Vigor maintains that because of Western's failure to produce documents that have "significantly altered the fact discovery landscape," it is necessary to reopen depositions to develop facts necessary for Vigor's experts to prepare their final reports. Dkt. #28 at 1-2.

Three factors clearly weigh against reopening discovery at this stage. First, trial is set for June 28, 2021 and therefore imminent. Second, Western opposes Vigor's request for the time extension. Third, the need for additional discovery was not foreseeable in this matter, and parties were afforded ample time to complete discovery. The Court did not set an abbreviated timeline at the outset and twice granted parties' requests to extend discovery-related deadlines. Accordingly, whether relief is appropriate hinges on the remaining three factors: (i) whether Western would be prejudiced by a time extension; (ii) whether Vigor was diligent in obtaining discovery within the guidelines established by the court; and (iii) the likelihood that reopening depositions will lead to relevant evidence. *City of Pomona*, 866 F.3d at 1066.

i. *Prejudice to Western*

Western argues that reopening discovery at this late date would prejudice Western as it would conceivably disrupt case deadlines, including the June 2021 trial date, and further extend the time since the Drydock sinking occurred in October 25, 2016. Dkt. #34 at 7, 10. The Court agrees. The Court has twice extended case deadlines in this matter, giving parties a considerable length of time to prepare expert reports and conduct discovery. In addition, consistent with this Court's April 29, 2021 deadline for dispositive motions, parties' cross-motions for summary judgment are now pending before the Court. *See* Dkts. ##39, 42. At this late stage, reopening discovery will further delay this matter that has been pending for over a year. To the extent Vigor argues that Western is waiting on supplemental productions from Vigor and has asked for additional depositions of Vigor personnel, *see* Dkt. #36 at 2, Western's potential reasons for seeking relief from the deadline are inapposite. Western had the opportunity to stipulate to Vigor's time extension motion and declined to do so. For that reason, any countervailing interest Western may have in extending deadlines in this case does not mitigate the prejudice inflicted from further delay.

ii. *Vigor's Diligence in Obtaining Discovery*

The Court likewise finds that the diligence prong weighs against granting Vigor's request to modify the scheduling order and reopen discovery. Notwithstanding Western's untimely disclosures, Vigor has shown neither excusable neglect nor good cause for extending factual discovery at this stage of the case. Vigor concedes that it failed to submit written reports for its weather expert, Ken Campbell, and its tug expert, Russ Johnson, by the March 5, 2021 deadline for expert testimony under Rule 26(a)(2). Vigor's March 5, 2021 expert disclosure statement acknowledges this deficiency by stating "[a]s discovery is not yet complete and Vigor

has yet to conduct key depositions in this case, these experts have not yet prepared written reports. Such reports will be disclosed as they become available." Dkt. #24 at 1. To the extent Vigor criticizes Western's reports timely submitted on March 5, 2021 as "based on incomplete and inaccurate facts and opinions," Dkt. #36 at 3, these challenges do not excuse Vigor's own failure to comply with the expert disclosure deadline.

Vigor argues that its reports belatedly disclosed on March 12, 2021 and March 30, 2021, respectively, were "initial reports and subject to revision" and that the complete reports "await Western's true cooperation in, and the completion of, the discovery process." Dkt. #36 at 4. Notwithstanding Vigor's contention that discovery was ongoing at the time expert disclosures were due, the requirements of Rule 26(a)(2) are clear: "Unless otherwise stipulated or ordered by the court, this disclosure *must be accompanied by a written report*—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony . . . ." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Consequently, while Vigor attempts to shift responsibility to Western based on information it uncovered in a March 26, 2021 deposition, Vigor had already missed the Rule 26(a)(2) deadline weeks earlier without seeking leave of this Court or moving for relief from the deadline. Accordingly, the Court is not persuaded that Vigor "diligently pursued sufficient discovery" throughout this litigation and, but for Western's unilateral actions related to the Courtney communications, it would have complied with the case deadlines.

iii. *Likelihood of Relevant Evidence*

Finally, allowing Vigor to conduct more depositions may likely lead to relevant evidence. Vigor contends that it would pursue new lines of inquiry based on newly-discovered evidence that Western consulted with Mr. Courtney before the voyage and with NOAA about

liability after the incident. Dkt. #36 at 3. However, the Court finds that the likelihood of discovering new evidence does not outweigh the remaining factors that weigh strongly against reopening discovery. *See Haines v. Get Air LLC*, No. CV1500002TUCRMEJM, 2018 WL 5020479, at *4 (D. Ariz. July 30, 2018) ("[A]llowing GALLC to use its expert reports and depose Plaintiff may well lead to evidence relevant to its defenses. However, that this one factor weighs in GALLC's favor does not outweigh all of the other factors supporting the undersigned's conclusion that the motion should be denied.").

For these reasons, Vigor has not shown good cause or excusable neglect to re-open the discovery process and once again modify this Court's scheduling order.

## IV. CONCLUSION

Having reviewed Defendant Vigor's motions, Plaintiff Western's responses, and the remainder of the record, the Court ORDERS:

(1) Defendant Vigor's Motion to File Over-Length Brief, Dkt. #33, is DENIED.

(2) Defendant Vigor's Motion to Stay Case, Dkt. #31, is DENIED;

(3) Defendant Vigor's Motion to Extent Discovery and Pre-Trial Deadlines, Dkt. #28, is DENIED.

IT IS SO ORDERED.

Dated this 13th day of May, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE