UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTERN TOWBOAT COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>VIGOR MARINE, LLC,<br><br>Defendant. | Case No. 20-0416-RSM<br><br>ORDER RE: MOTIONS IN LIMINE |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff-Counterclaim Defendant Western Towboat Company ("Western")'s Motions in Limine, Dkt. #67, and Defendant-Counterclaim Plaintiff Vigor Marine, LLC ("Vigor")'s Motions in Limine, Dkt. #64. Parties have also filed stipulated Motions in Limine, Dkt. #66. For the reasons set forth below, these Motions are GRANTED, DENIED and DEFERRED as follows.

## II. LEGAL STANDARD

Parties may file motions in limine before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2, 105

S. Ct. 460, 83 L.Ed. 2d 443 (1984). To resolve such motions, the Court is guided by Fed. R. Evid. 401 and 403. Specifically, the Court considers whether evidence "has any tendency to make a fact more or less probable than it would be without the evidence," and whether "the fact is of consequence in determining the action." Fed. R. Evid. 401. The Court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III. DISCUSSION

#### A. Stipulated Motions in Limine

Parties have stipulated to four motions in limine. Parties' second motion in limine regarding the June 7, 2021 pre-trial conference and joint pre-trial order is moot, given that the pre-trial conference was held on June 23, 2021 and parties have submitted their pre-trial order. *See* Dkt. #75. The remaining motions are GRANTED, wherein parties agree to:

1. Provide the Court and each other with 24-hour notice of an expected testifying witness or deposition transcript to be introduced at trial, with the exception of deposition transcripts offered for impeachment only.

2. For any and all testimony by remote/video means, all remote participants must be on camera.

3. Premal Shaw will not testify in any capacity.

#### B. Western's Motions in Limine

Western moves to exclude testimony related to Vigor's expert witnesses, either by prohibiting four of Vigor's experts from testifying or, alternatively, limiting their testimony to the opinions in their reports. Western also moves to exclude experts that were not specially

ORDER RE: MOTIONS IN LIMINE
PAGE - 2

retained but never disclosed, as well as the testimony of Daryl Herzmann. Finally, Western moves for the sequestration of witnesses pursuant to Fed. R. Evid. 615.

1. Exclusion of Experts

Western moves to exclude the testimony of Vigor experts Russell Johnson, Thomas Gilmour, Ken Campbell, and rebuttal testimony from Michael Naylor for both procedural and substantive reasons. Dkt. #67 at 3.

i. Western's Procedural Objections

Western argues that Rear Admiral Gilmour's and Mr. Campbell's expert reports failed to set forth the information required under Rule 26(a)(2)(B), such that both the reports and these experts' testimonies should be excluded at trial. Likewise, Western argues that Mr. Naylor's rebuttal report was untimely under Fed. R. Civ. P. 26(a)(2)(D) and should be excluded on this basis.

Vigor responds that Western's procedural objections to Rear Admiral Gilmour's and Mr. Campbell's testimonies are unsupported, given that Western submits no affidavit or evidence in support of their statements that Vigor failed to provide the information required under Fed. R. Civ. P. 26(a)(2)(b). Vigor claims that it provided "all of this information" to Western in advance of both experts' depositions. *See* Dkt. #70-1 at 2-3. Regarding Mr. Naylor's rebuttal report, Vigor maintains that it served Western with that report on April 23, 2021, and the Court excused Vigor's late disclosure in its order dated May 27, 2021. *See* Dkt. #62. It also claims that Western had the opportunity to depose Mr. Naylor on June 3, 2021, thereby mitigating any prejudice.

Based on correspondence between Vigor's and Western's counsel, it appears that Western identified deficiencies in Vigor's expert disclosures in advance of their depositions. *See* Dkt. #71-1 at 3 (Email from Simms to Jarrett requesting Rule 26(a)(2)(B) information for Captain

ORDER RE: MOTIONS IN LIMINE
PAGE - 3

Johnson, Rear Admiral Gilmour, and Ken Campbell). These deficiencies included the list of publications authored in the past 10 years, the list of all cases in which the witness testified, and a statement of compensation to be paid for the study and testimony. *Id.* The correspondence also indicates that Vigor supplied this information in advance of the depositions, thereby mitigating any prejudice to Western. *See id.* at 2-3.

While the Court does not condone Vigor's untimely and incomplete expert disclosures, the matter of Vigor's failure to comply with Rule 26 requirements for its expert disclosures was addressed on Vigor's telephonic motion. For the reasons set forth in the Court's order dated May 27, 2021, the Court declined to impose the extreme sanctions under Fed. R. Civ. P. 37(c) of excluding Vigor's expert witnesses in entirety. *See* Dkt. #62. To the extent Western contends that Vigor's expert disclosures were incomplete, the fact that Vigor supplied the missing information in advance of the depositions cured any prejudice. For that reason, the Court declines to exclude Vigor's experts' testimony on this basis. *See Holen v. Jozic*, No. C17-1147JLR, 2018 WL 5761775, at *2 (W.D. Wash. Nov. 2, 2018). ("District courts are given 'particularly wide latitude' in determining whether to issue sanctions, including the exclusion of evidence, under Rule 37(c)(1).") (quoting *Bess v. Cate*, 422 F. App'x 569, 571 (9th Cir. 2011)).

ii. Western's Substantive Objections

Turning to Western's substantive objections, Western argues that Captain Johnson opines on topics in which he is not expert—namely, the Code of Federal Regulations, and whether Western's belief that the tug had a "weather window" to push out into open ocean was a bad decision. *Id.* at 4-5. Western also objects to Captain Johnson's testimony on the basis that the expert report does not expressly state that Western's actions were the "but for" cause of the drydock Sinking. Regarding Rear Admiral Gilmour, Western argues that his report improperly

reaches legal conclusions that the Drydock sinking could have been avoided with a properly-written Tow Plan for Captain McGavock to use.[1]  Finally, Western argues that Mr. Campbell's opinions are improper as he offers opinions about the weather, but offers no opinions as to whether "but for" any weather condition, the YFD-70 would not have sunk.

Vigor responds that Western's arguments are thinly-disguised *Daubert* motions that were due by the dispositive motion deadline and therefore untimely.  Dkt. #70 at 2-3.  Vigor also argues that Captain Johnson's testimony is relevant to address the prudence of Mr. Shrewsbury's and Captain McGavock's decision to press ahead with the voyage and, to the extent Western finds portions of Captain Johnson's testimony unsupported or speculative, it may make such objections at trial.  Regarding Rear Admiral Gilmour's testimony, Vigor contends his opinions are relevant to show what a reasonably prudent tow company and tow master would have done under the circumstances, and Western's disagreement with his conclusions is not a basis to exclude him.  Furthermore, regarding Western's objections to both Rear Admiral Gilmour's and Mr. Campbell's testimony, Vigor argues that Western has supplied no authority in support of its argument that experts who fail to opine on a "but for" basis must be excluded.

The Court agrees that Western's substantive arguments for excluding Vigor's experts' testimony—including improperly making legal opinions and failing to expressly opine on the "but for" causes of the Drydock's sinking—are unavailing.  The Court finds that each of the experts intend to provide relevant testimony.  To the extent Western objects to any conclusion

---

[1] Western also moves to exclude Rear Admiral Gilmour's opinion testimony as to whether Western should have known the location of the sanctuary and avoided it, whether the sanctuary should have been avoided at all costs, and whether it was negligence to allow the Drydock to sink inside the sanctuary. Dkt. #67 at 5-6. Because it appears the question of Western's negligence with respect to the sinking of the Drydock inside the sanctuary was resolved on summary judgment, the Court defers ruling on this motion.

ORDER RE: MOTIONS IN LIMINE
PAGE - 5

the experts may reach, it may raise an objection at trial. Accordingly, the Court DENIES Western's motion no. 1 seeking to exclude the testimony of Vigor's four expert witnesses.

2. <u>Limiting Expert Testimony</u>

Western argues that if the Court allows the four experts listed above to testify, their testimony should be limited to the opinions in their reports. Dkt. #67 at 7-8. Vigor agrees that all experts should be limited to the opinions expressed in their reports and has moved for the same restriction in its motions in limine. Dkt. #70 at 6-7. However, parties disagree as to the handling of (i) the Coast Guard Incident Investigation Report; and (ii) Western's rebuttal expert reports.

        i.      Coast Guard Incident Investigation Report

Western claims that it obtained the U.S. Coast Guard's Incident Investigation Report ("Coast Guard Report") on April 8, 2021 through a Freedom of Information Act ("FOIA") request in January 2021, and that Vigor had the opportunity to also obtain this document through a FOIA request. Dkt. #67 at 7-8. Because Vigor never requested the Coast Guard Report, Western argues, Vigor's experts' testimony should be limited to what they wrote in their reports without opining on the Coast Guard Report. *Id.* at 8.

Vigor responds that Western never provided notice of the Coast Guard report to Vigor until it included it in its summary judgment motion on April 29, 2021, despite the fact that Vigor requested production of "any written communications of any type relating or referring to the Voyage, the Incident . . . ." Dkt. #71-2 at 2-3. Vigor claims that the Coast Guard report does not change its expert's opinions and, on the contrary, reinforces them. For that reason, Vigor argues, the Coast Guard report is a supplemental document on which its experts will rely but will not offer new opinions. Furthermore, Vigor contends that the Coast Guard report itself is

inadmissible by statute. *See* 46 U.S.C. § 6308 ("Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title . . . shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.").

The Court declines to rule on the admissibility of the Coast Guard Report itself, given that the matter has not been fully briefed. However, it is not persuaded that the Coast Guard report constitutes a "communication" regarding the voyage such that Western was required to produce it—particularly when considering that it was publicly-available as of December 2020 such that Vigor could have obtained it through its own FOIA request. For this reason, Vigor's experts shall not be permitted to opine on the Coast Guard report.

    ii.  Western's Rebuttal Reports

Western also argues that the Court should not exclude Western's expert rebuttal reports, which were untimely due to the fact that the Court only allowed Vigor's late expert reports in its May 27, 2021 order, providing that Western depose those experts in the next 14 days. *See* Dkt. #62. Vigor contends that it produced its untimely expert reports in March and April, and Western declined offers to depose those experts until after the Court's order granting Vigor's telephonic motion to excuse untimely disclosure. For that reason, Vigor argues, the Court should not allow Western to "take advantage of the role it played in delaying expert discovery" by allowing late expert rebuttal reports.

Given that the Court excused Vigor's untimely expert disclosures, Western will be allowed to present its expert rebuttal reports to Vigor's untimely disclosures.

Accordingly, the Court GRANTS Western's motion in limine no. 2 to limit Vigor's expert testimony to their opinions set forth in their reports. Vigor's experts will not be permitted to

opine on the Coast Guard Report. However, Western's experts will be allowed to present expert rebuttal reports in response to Vigor's untimely disclosures.

3. <u>Exclusion of Testimony from Experts not Specially Retained but Undisclosed</u>

Western moves to exclude testimony from any undisclosed, but not specially retained, expert witnesses. On March 5, 2021, Vigor filed a list of experts it retained to provide expert opinion, including Premal Shah and Greg Challenger. Dkt. #24. Parties have agreed that Premal Shah will not testify. Dkt. #66. However, Vigor still intends for Mr. Challenger to testify as a fact witness on "his experiences with NOAA in similar circumstances and expectations as to how NOAA will conduct assessments of the parties involved in Western's sinking the Drydock in the Sanctuary." Dkt. #75 at 9. Western argues that because Mr. Challenger is, indeed, an expert and because his expert report was never produced pursuant to Fed. R. Civ. P. 26(a)(2)(B), his testimony should be excluded. Dkt. #67 at 10. Vigor responds that Mr. Challenger is qualified to testify as a fact witness based on the nature of his testimony.

As an initial matter, Western's motion appears moot in light of the Court's summary judgment ruling dismissing all claims seeking to resolve parties' prospective liability to NOAA under the National Marine Sanctuaries Act. However, to the extent Vigor still intends to present Mr. Challenger as a fact witness, the Court agrees that Vigor intended to present him as an expert witness to opine on "damages related to the sinking of the dry dock, in particular how damages, mitigation, cooperation, etc. affect final determination of penalties and damages assessed by NOAA under the National Marine Sanctuaries [A]ct." Dkt. #24 at 2. To the extent Vigor now attempts to reframe Mr. Challenger's testimony as merely "expectations as to how NOAA will conduct assessments of the parties involved in Western's sinking of the Drydock in the Sanctuary," the Court finds that such testimony cannot be construed as Mr. Challenger's

personal, first-hand knowledge based on personal perception. Rather, it falls within the realm of Mr. Challenger's scientific, technical, or other specialized knowledge" designed to help the trier of fact "understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 701(a).

Accordingly, Western's motion in limine no. 3 is GRANTED as to exclusion of Mr. Challenger's testimony.

4. <u>Testimony of Daryl Herzmann, Systems Analyst and Related Exhibits</u>

Western moves to exclude the testimony of Mr. Herzmann on the basis that neither Mr. Herzmann, nor the exhibits related to him, were disclosed in discovery so that Western's weather expert could consider them. Dkt. #67 at 11. Vigor maintains that Mr. Herzmann's testimony is solely for the purpose of certifying the authenticity of the reproductions of public records related to the weather conditions when the voyage commenced. These public records are from the weather data archives overseen by Mr. Herzmann at Iowa State University's Iowa Environmental Mesonet, which Vigor discovered on May 12, 2021 and produced to Western on May 27, 2021. Dkt. #71-5; Dkt. #71-6. Vigor maintains that Western had "fair opportunity" to challenge these records and made Mr. Herzmann's certification available to Western on June 11, 2021.

The Court finds that these records are self-certifying such that Mr. Herzmann's testimony is not necessary. FRE 902 provides that domestic records meeting the requirements of Fed. R. Evid. 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person, are self-authenticating such that they require no extrinsic evidence to be admitted. Fed. R. Evid. 902(11). FRE 803(6) provides that the record comprises a "record of a regularly conducted activity" if the record of an event was (A) made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of an organization; and (C) making the record was a regular practice of that

ORDER RE: MOTIONS IN LIMINE
PAGE - 9

activity. Fed. R. Evid. 803(6). FRE 902(13) and (14) further provide that certified records generated by or copied from an electronic process or system are self-certifying. Fed. R. Evid. 902(13)-(14).

Mr. Herzmann has certified as custodian of the archival weather data available on Iowa State University's Iowa Environmental Mesonet ("IEM") website that the website collects environmental data "from cooperating members with observing networks," that the PNG representations of weather forecasts issued by the National Weather Service contained in documents VM003493 through VM003583 are "true and correct copies" of IEM records made at or near the time of the events reflected in them based on contemporaneous public weather data, and that the IEM keeps these records in the course of IEM's regularly conducted activities. Dkt. #71-5 at ¶¶ 3-8. Based on Mr. Herzmann's declaration, the Court finds that the IEM records are self-certifying pursuant to Fed. R. Evid. 902(11); (13)-(14). Vigor has likewise met the notice requirements of FRE 902, which provides that the proponent of the certified domestic record "must give an adverse party reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them." Fed. R. Evid. 902(11). Here, Vigor produced Mr. Herzmann's certification to Western's counsel on June 11, 2021. Dkt. #71-6.

Accordingly, Western's motion no. 4 is moot on the basis that there is no need for Mr. Herzmann to testify, and DENIED with respect to excluding the exhibits themselves.

5. Exclusion from Non-Testifying Fact Witnesses from Courtroom

Both parties have requested that the Court exclude non-testifying fact witnesses from trial except for those excluded under Fed. R. Evid. 615. While parties disputed whether Dawn

Cartwright should be excluded, Vigor has determined that Ms. Cartwright will not attend trial, making this motion moot.

**C. Vigor's Motions in Limine**

Vigor moves to exclude evidence related to (1) Western's experts' testimony; (2) arguments related to favorable forecasts along the intended route; (3) duplicative weather and navigation experts; and (4) excluding witnesses from the courtroom except for client representatives and Rule 30(b)(6) witnesses.

1. <u>Western's Expert Testimony</u>

Vigor argues that Western's experts' testimony should be limited to the opinions expressed in their disclosed reports pursuant to Rule 26, which requires that an expert report "contain a complete statement of all opinions to be expressed and the basis and the reasons therefor" to facilitate discovery. Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e) requires a party to supplement or correct disclosure upon information later acquired, but "that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." *Vigil v. Burlington N. & Santa Fe Ry.*, 521 F. Supp. 2d 1185, 1207 (D.N.M. 2007) (internal quotations omitted). For these reasons, Vigor moves the Court to limit Western's expert testimony to only those opinions and conclusions expressed in the disclosed expert reports and to prohibit them from eliciting new opinions at trial. Dkt. #64 at 3.

In contrast to Western's motion to limit expert testimony, which identifies the Coast Guard report and Western's rebuttal reports as the two unresolved issues between the parties, Vigor's motion is written so broadly that the Court cannot identify which opinions it seeks to limit. Western's response, in turn, attempts to guess which expert testimony Vigor's motion was aimed at. This vagueness makes it impossible to evaluate which potential expert testimony Vigor

views as "sandbagging" such that it must be excluded. On this basis alone, the Court DEFERS ruling on Vigor's motion in limine no. 1. However, to the extent Vigor seeks to strike Western's experts' rebuttal reports, the Court DENIES Vigor's motion given that it has determined that Western's experts will be allowed to present expert rebuttal testimony in response to Vigor's untimely disclosures. *See* § III(B)(2), *supra*.

### 2. Favorable Weather Forecasts

Vigor moves to exclude argument or evidence that Western had favorable weather forecasts before and during the OCEAN RANGER's voyage on the basis that Western destroyed the documentary evidence of those forecasts. Dkt. #64 at 3. Vigor's discovery requests sought "copies of any and all emails, instant messages, electronic data, memoranda, correspondence, notes, log entries, or other written communications of any type relating or referring to the Voyage, the Incident, weather forecasts for the Voyage and/or the weather conditions to be encountered on the Voyage[.]" Dkt. #64-2 at ¶ 3. Vigor claims that although Western provided testimony confirming that it gathered and recorded weather data throughout the voyage, it produced none and has cited none in support of its assertions that weather conditions allowed the tow to commence and were not the cause of the Drydock's sinking. Vigor further argues that because Western lost or destroyed this evidence, the Court should prohibit Western from presenting testimony that it had forecasts showing favorable weather conditions for the voyage pursuant to Rule 37(c). *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Western responds that it has produced "numerous documents" regarding the weather conditions during the tow, including emails from Rich Courtney of Maritimewx. Dkt. #72 at 8-9. It contends that Western's mariners monitored weather and wave conditions as an "inherent part of navigation," as the depositions of Western's witnesses made clear. Furthermore, Western denies any spoliation of evidence on the bases that (1) there was no obligation to preserve any weather data at the time it was kept; and (2) Western lacked the requisite bad faith when evidence as to the weather conditions was destroyed.

When determining whether spoliated evidence warrants a sanction, courts in the Ninth Circuit apply the three-part *Zubulake* test. *See Apple, Inc. v. Samsung Electronics, Co., Ltd*., 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). Under *Zubulake*, the party seeking the sanction with respect to spoliated evidence must show: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake*, 220 F.R.D. at 220.

It is not apparent that aside from the ship's log, which reported daily weather and wave conditions as observed by the OCEAN RANGER's crew, that Western preserved any records of weather conditions that it later destroyed. In *Zubulake*, the moving party identified several missing backup tapes that the non-moving party claimed were "lost." *Id.* at 219–20. Here, in contrast, Vigor has not identified any weather forecasts that it believes Western maintained and destroyed, aside from a scrap sheet of paper on which Captain McGavock may have recorded forecast conditions. *See* Dkt. #65-1 at 5. To the extent Western had an obligation to preserve

weather data the tug encountered on its voyage, pursuant to Western's contractual obligation to monitor and record weather data for the voyage, this data was preserved in the ship's logs provided to Vigor. *See* Dkt. #64 at 3 ("[Western] partially fulfilled that obligation by recording local observed conditions in the ship's log."). While Vigor attempts to distinguish between evidence of forecasted weather and evidence of weather the tug actually encountered, the Court declines to find that Captain McGavock's discarding of his scrap sheet of paper—after weather data had been memorialized in the ships logs—amounts to Western "destroy[ing] critical weather data" that it was obligated to preserve.

On this basis, the Court declines to impose the harsh sanction of excluding Western's testimony that it had favorable weather forecasts before and during the OCEAN RANGER's voyage on the basis that Western destroyed the documentary evidence of those forecasts. Vigor's motion in limine no. 2 is DENIED.

### 3. Duplicative Engineering and Navigation Expert Testimony

Vigor moves to limit Western to presenting one navigational expert and one engineering expert pursuant to Fed. R. Evid. 403, on the basis that Western seeks to offer testimony of two navigational experts and two engineering experts that would be unnecessarily cumulative and duplicative. Dkt. #64 at 10. Regarding navigational experts, Western intends to offer both Captain Bruce Fox and Captain Dominique Smith as experts to testify about the reasonableness of the OCEAN RANGER's crews' conduct before, during and after the sinking of the YFD-70. Western also intends to offer two separate engineering experts—David Kriebel and Patrick Hudson—who will both testify that the YFD-70 sank due to the unseaworthy condition of the barge, and that Vigor is at fault for failing to tender a seaworthy tow. Vigor moves to exclude one of Western's engineering experts pursuant to Fed. R. Evid. 403.

Western responds that it should not be limited to presenting one navigational expert and one engineering expert, as Vigor has not specifically identified any overlap in their testimony.[2] Furthermore, Western argues that this motion is premature on the basis that any testimony deemed cumulative can be objected to at trial.

Western has sufficiently demonstrated that its navigational and engineering experts' testimony are not cumulative to the point that exclusion of their entire testimony is warranted. Western explains that its navigational experts, Captains Fox and Smith, will testify as to two different issues: towing experience on the West Coast and in Alaska, compared to towing drydocks. Dkt. #72 at 12. Likewise, Dr. Kriebel is an expert on wave behavior and relation to vessels, whereas Dr. Hudson is an expert on the mechanics of drydock towing and structural dynamics. *Id.* at 13. In light of these distinctions, the Court finds Vigor's motion premature. To the extent Western finds portions of these experts' testimonies cumulative or duplicative, it may make such objections at trial.

Accordingly, Vigor's motion no. 3 seeking to exclude duplicative engineering and/or navigational testimony is DENIED.

4. Excluding Witnesses from the Courtroom

Lastly, Vigor moves to exclude witnesses from the courtroom pursuant to Fed. R. Evid. 615, which requires a trial court to order witnesses excluded unless an exception applies. FRE 615 provides:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:

---

[2] The Court notes in Vigor's praecipe, Dkt. #74, that it erroneously stated "weather experts" instead of "engineering experts." For that reason, the Court need not consider Western's response addressing whether its weather experts' testimony may overlap.

(a) a party who is a natural person;
(b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
(c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
(d) a person authorized by statute to be present.

Fed. R. Evid. 615. Vigor also moves for exclusion of non-exempt witnesses after they testify. *U.S. v. Ell*, 718 F.2d 291, 293 (9th Cir. 1983). Furthermore, Vigor requests that any witnesses exempted from the exclusion order, including designated representative under FRE 615(b) or Rule 30(b)(6) witnesses, should be required to testify before any non-exempt witness. *See United States v. Mitchell*, 733 F.2d 327, 329 (4th Cir. 1984) ("[B]etter practice suggests that if the [exempt] agent is to testify, he should testify as the [Party]'s first witness, unless . . . there [are] good reasons otherwise.").

Western responds that Vigor's motion is "overly broad" and seeks to exclude Western's expert witnesses. Dkt. #72 at 15-16. Neither party specifically identifies the expert witnesses that Vigor's motion is directed at, but Western maintains that it has disclosed both "specially retained and non specially retained experts." *Id.* at 16. While Western does not object to the exclusion of fact witnesses, it maintains that Vigor's overly-broad motion to sequester all witnesses except client representatives and Rule 30(b)(6) witnesses would prevent Western's experts who are essential to Western's claims and defenses under FRE 615(c).

The purpose of excluding witnesses from the courtroom under FRE 615 is "to prevent witnesses from 'tailoring' their testimony to that of earlier witnesses." *United States v. Seschillie*, 310 F.3d 1208, 1212–13 (9th Cir. 2002). To claim that a witness is "essential" under FRE 615(c), "the party seeking an exception must make a 'fair showing' that the expert witness is in fact required for the management of the case." *Id.* at 1213 (internal quotations omitted). With respect

to expert witnesses, the Ninth Circuit has recognized that the exception under FRE 615(c) constitutes a "fairly low bar, particularly for expert witnesses that need to hear the testimony of factual witnesses in order to properly provide opinion evidence." *Stevenson v. Holland*, 504 F. Supp. 3d 1107 (E.D. Cal. 2020); *see also Seschillie*, 310 F.3d at 1214 ("[A]n expert who is not expected to testify to facts, but only assumes facts for purposes of rendering opinions, might just as well hear all of the trial testimony so as to be able to base his opinion on more accurate factual assumptions.").

The Court finds that Western has met the "low bar" with respect to availing itself of the exception under FRE 615(c) for its expert witnesses. Accordingly, Vigor's motion no. 4 is GRANTED such that witnesses who are non-exempt under FRE 615 shall be excluded from the courtroom before and after they testify, and those witnesses exempted from this exclusion order shall be required to testify before any non-exempt witness. However, to the extent Vigor seeks to exclude Western's expert witnesses, these witnesses are exempt from the exclusion order under FRE 615(c) as "essential."

## IV. CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that the above Motions in Limine (Dkts. #67, #64) are GRANTED, DENIED and DEFERRED as stated above.

DATED this 25th day of June, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE