UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTERN TOWBOAT COMPANY,<br><br>    Plaintiff–Counterclaim Defendant,<br><br>    v.<br><br>VIGOR MARINE, LLC,<br><br>    Defendant–Counterclaim Plaintiff. | No. C20-0416-RSM<br><br>ORDER RE: PARTIES' POST-TRIAL BRIEFING |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff–Counterclaim Defendant Western Towboat Company ("Western Towboat")'s and Defendant–Counterclaim Plaintiff Vigor Marine, LLC ("Vigor")'s post-trial briefing to resolve the outstanding legal question raised by Western on the final day of trial related to payments by Vigor's insurers. *See* Dkt. #96. At the Court's request, parties have submitted briefing on the issue. *See* Dkts. #99, #100, #101. Having reviewed Western's brief, Vigor's response, Western's reply, the exhibits attached thereto, and the remainder of the record, the Court DENIES Western's Motion for Judgment and resolves the outstanding legal question as set forth below.

ORDER RE: PARTIES' POST-TRIAL BRIEFING - 1

## II. BACKGROUND

A full background of this case is not necessary given the Court's previous orders in this matter. *See* Dkt. #77. On June 21, 2021, this Court concluded as a matter of law that Western failed to exercise prudent seamanship by releasing the Drydock YFD-70 ("the Drydock") inside the Monterey Bay National Marine Sanctuary ("Marine Sanctuary"). Accordingly, the Court granted summary judgment on Western's counterclaim for maritime negligence. Dkt. #77 at 38. The Court likewise concluded that to the extent parties sought preemptive relief from liability to the United States under the National Marine Sanctuaries Act ("NMSA"), such claims were properly dismissed for lack of subject matter jurisdiction. *Id.* at 16.

Between June 28 and July 7, 2021, the Court conducted a bench trial in this matter on parties' cross-claims for breach of contract under parties' October 4, 2016 contract for the Drydock tow ("Towing Agreement") and the question of Vigor's comparative negligence with respect to the Drydock's sinking. On the final day of trial, Western argued that Vigor is not entitled to damages for its maritime negligence counterclaim because Vigor's insurers paid for a portion of the damages Vigor incurred from its exposure to NMSA liability. *See* Dkt. #106 at 57:18-25. Given these payments and a waiver of subrogation in parties' Towing Agreement, Western argued, there is no real party in interest in this case. *Id.* The Court requested post-trial briefing on this narrow issue, which parties have provided. *See* Dkts. #99, #100, #101.

## III. DISCUSSION

In addition to addressing the narrow legal issue of how payments by Vigor's insurers affect Vigor's counterclaim, Western raises several arguments beyond the scope of the insurance question. Specifically, Western argues that Vigor is not entitled to recover on its maritime negligence counterclaim due to lack of ripeness and the voluntariness of its payments. Dkt. #99 at 2-8. Both arguments are untimely, given that the Court ruled at summary judgment that Vigor's

claim satisfied the elements of maritime negligence, including damages. *See* Dkt. #77 at 38 ("Regarding damages, it is undisputed that Vigor has incurred costs as a result of parties' exposure to liability under the NMSA."). To the extent Western now argues that Vigor's counterclaim fails to satisfy the "damages" element, such arguments were properly raised at summary judgment or on a motion for reconsideration. The Court will not consider them herein.

Western's post-trial brief also argues that Vigor has failed to introduce evidence to support its claim that the expenses it incurred to survey the Drydock's wreckage were reasonable and necessary. Dkt. #99 at 8-12. Again, this argument exceeds the scope of the narrow insurance issue for which the Court requested briefing. Moreover, consideration of whether Vigor has met its burden to prove damages is an issue the Court will address in its forthcoming findings of fact and conclusions of law. It need not address this argument here.

Turning to the relevant question before the Court—whether payments by Vigor's insurers affect Vigor's ability to recover—the Court identifies two separate legal issues that require consideration. First is Western's assertion that there is no real party in interest claiming damages, given that Vigor "has already been made whole for all of this" such that it has no right to raise the claim. Dkt. #106 at 57:23-25; 58:1-2. Second is whether the collateral source rule applies here, such that payment by Vigor's insurers should be deducted from Vigor's total recovery. The Court will address each argument in turn.

**A. Real Party in Interest**

Having considered the record and parties' post-trial briefing on the issue, the Court finds that Western's real party in interest argument fails both procedurally and on the merits. As an initial matter, Western waived this argument by waiting until the final day of trial to raise it. A defense to liability based on real party in interest arises from the prudential standing requirement set forth in Fed. R. Civ. P. 17, which provides that "every action shall be prosecuted in the name

of the real party of interest." Fed. R. Civ. P. 17(a).  "[T]he modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Fed. R. Civ. P. 17, Advisory Comm. Note to 1966 Amend.  It is well-established that a party waives a Rule 17(a) argument by failing to plead it as an affirmative defense or raise it prior to trial.  *See, e.g.*, *Hefley v. Jones,* 687 F.2d 1383, 1388 (10th Cir. 1982) (real party in interest objection waived unless pleaded as affirmative defense); *Chicago & Northwestern Transp. Co. v. Negus–Sweenie, Inc.,* 549 F.2d 47, 50 (7th Cir. 1988) (same); *Blau v. Lamb,* 314 F.2d 618, 620 (2d Cir.), *cert. denied,* 375 U.S. 813 (1963) (same); *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1431 (3d Cir. 1994) (real party in interest objection waived by failure to raise prior to trial; *Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100, 102 (5th Cir.), *cert. denied,* 494 U.S. 1031 (1990) (same); 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1294–95 (4th ed.) (failure to deny capacity to sue is waiver).  On this basis alone, Western's argument fails.

Even if the Court considered Western's untimely argument, Vigor is clearly a real party in interest in this action.  The Supreme Court has applied the following real party in interest analysis to subrogation cases: "[i]f the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name.  If it has paid only part of the loss both the insured and insurer (and other insurers, if any, who have also paid portions of the loss) have substantive rights against the tortfeasor which qualify them as real parties in interest." *United States v. Aetna Cas. & Sur. Co.,* 338 U.S. 366, 380–81 (1949) (internal citation omitted).  Here, Western does not dispute that Vigor's insurers only partially compensated its losses.  *See* Dkt. #99 at 2.  Vigor is therefore a real party in interest and entitled to recover damages from Western for its maritime negligence.

ORDER RE: PARTIES' POST-TRIAL BRIEFING - 4

Alternatively, Western argues that even if Vigor is entitled to recover some amount of damages, Vigor is a real party in interest only to the extent it has not been reimbursed by its insurers. Dkt. #99 at 12. For that reason, it contends, Vigor is only entitled to recover $43,448.03 of the $397,476.67 claimed damages. *Id.* Besides citing Rule 17(a), Western offers no authority for its position that Vigor is not a real party in interest to recover the full amount of damages. Instead, Western's argument—and Vigor's response—focus on the separate question of whether the collateral source rule applies here. *See* Dkts. #99, #100. The Court finds Western's position regarding Rule 17(a) unsupported by the case law. Under federal law, which governs this procedural question, "a partial subrogor is a real party in interest *as to the entire claim* when the subrogor is entitled to enforce the entire claim and payment to the subrogor will completely extinguish the defendant's liability." *Glacier Gen. Assur. Co. v. G. Gordon Symons Co.*, 631 F.2d 131, 134 (9th Cir. 1980) (emphasis added) (citing *Virginia Electric & Power Co. ex rel. Insurance Co. of North America v. Westinghouse Electric Corp.*, 485 F.2d 78, 83–84 (4th Cir. 1973), *cert. denied*, 415 U.S. 935 (1974)). Consistent with the Ninth Circuit's holding in *Glacier*, the Court finds that Vigor is a real party in interest and may maintain an action to recover the entire claim. *Id.*

Furthermore, although parties' briefing does not address the issue, the Court must consider the related question of whether joinder of Vigor's insurers under Rule 19 is procedurally required. As an initial matter, the deadline for joining additional parties expired more than a year ago, *see* Dkt. #14 at 1, and the Court finds no good cause basis to extend this deadline. Moreover, even if joinder were feasible at this late stage of the proceedings, Vigor's insurers are not necessary parties under the Rule 19(a) standard. *See Glacier Gen. Assur. Co.*, 631 F.2d at 134–35 ("Where, as here, a plaintiff brings a suit for an entire claim even though the plaintiff's insurance company has partially reimbursed the loss, the insurance company is not a necessary party."). Here, relief

can be granted to Vigor alone, the insurers' absence will not impair or impede the insurers' abilities to protect their interests, and their absence will not expose Western to substantial risk of incurring double liability or inconsistent obligations. Fed. R. Civ. P. 19(a)(1); *see also Brocklesby Transp. v. E. States Escort Servs.*, No. 86 CIV. 9270 (JFK), 1990 WL 115718, at *2 (S.D.N.Y. Aug. 6, 1990) ("[W]hen it is the insured itself who brings suit, the partial subrogee is not a necessary party, because the insured sues to recover the full loss. In that case, res judicata protects the defendant from another suit, and additional protection is afforded by impressing a trust for the benefit of the subrogee."). Accordingly, the Court concludes that partial reimbursement by Vigor's insurers poses no procedural limitation under Rules 17 or 19 on Vigor's ability to recover the full amount of damages for its maritime negligence claim.

**B. Collateral Source Rule**

Parties' arguments regarding the effect of Vigor's insurers' payments on Vigor's recovery also raise the separate question of whether the collateral source rule applies here. *See* Dkts. #99, #100. Unlike Western's argument under Rule 17(a), which was an untimely procedural argument that Western waived prior to trial, the collateral source rule is a substantive principle of damages.[1] The Court finds that Western's argument as to whether the collateral source rule limits Vigor's damages is not untimely, given that the damages calculation is an issue expressly reserved for trial. *See, e.g.*, *Stanley v. Bertram-Trojan, Inc.*, 868 F. Supp. 541, 545 (S.D.N.Y. 1994) (court sitting in admiralty considered application of collateral source rule for post-trial damages calculation).

---

[1] The collateral source rule is also an evidentiary rule that prohibits introduction of evidence offered to show that a plaintiff has already been compensated for his injuries. *See Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1310 (11th Cir. 2020). In this case, parties' dispute only concerns the rule's substantive function.

ORDER RE: PARTIES' POST-TRIAL BRIEFING - 6

Under the collateral source rule, "if an injured person receives compensation for his injuries from a source wholly independent of the tort-feasor, the payment should not be deducted from the damages which he would otherwise collect from the tortfeasor." Black's Law Dictionary, 262 (6th ed. 1990). The purpose of the rule is two-fold. First, it aims to ensure that tortfeasors bear the costs of their own conduct and do not benefit from a plaintiff's foresight to arrange benefits from a collateral source. *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 304–05 (5th Cir. 2008). Secondly, the "wholly independent" requirement of the rule prevents tortfeasors "from paying twice for the same injury—a result that would achieve both overdeterrence and overcompensation." *Davis v. Odeco, Inc.,* 18 F.3d 1237, 1244, n.21 (5th Cir.1994). This rule reflects a policy determination that favors a potential windfall for an injured plaintiff rather than for a liable tortfeasor. *See* Restatement (Second) of Torts § 920A cmt. b. (Am. Law Inst. 1979) ("[I]t is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor"); *see also Siverson v. United States*, 710 F.2d 557, 560 (9th Cir. 1983) (collateral source rule prevents defendant from receiving windfall, regardless of whether application of rule results in double recovery for plaintiff). Because the collateral source rule applies as a matter of federal law, it extends to maritime tort cases. *Higgs*, 969 F.3d at 1311.

Where a towage contract requires parties to procure insurance for the other's benefit so that insurance pays for certain losses, insurance payments a party receives for those losses are not "wholly independent" from the other party. *See Dillingham Tug & Barge Corp. v. Collier Carbon & Chem. Corp.*, 707 F.2d 1086, 1091 (9th Cir. 1983) ("Union was required to purchase the insurance for Dillingham's benefit. Presumably, Dillingham gave up something in return. Therefore, the insurance payment was not a source wholly independent of Dillingham. . . . [T]o the extent that Union has been paid for its loss by its insurer, Union cannot now collect from

ORDER RE: PARTIES' POST-TRIAL BRIEFING - 7

Dillingham."). Here, Section 8.B of the Towing Agreement required Vigor to procure and maintain hull and machinery insurance, protection and indemnity insurance, and pollution and environmental liability insurance. Dkt. #40-1 at 6. Exhibits admitted into evidence at trial confirm that Vigor secured insurance policies with Berkley Offshore, Starr Marine and XL Specialty for the Drydock's tow to Ensenada. *See* Tr. Ex. A-76. These insurers are the same insurers that either paid Eclipse Group directly for its survey of the wreckage site or reimbursed Vigor for its payments. *See* Tr. Ex. A-94. It requires no great logical leap to surmise that the thousands of dollars of insurance coverage for Eclipse's survey services arose from the same policies that Vigor was required to procure under the Towing Agreement.

Rather than identify which policies covered Vigor's losses here and explain why those policies are independent from the required insurances under Section 8.B, Vigor attempts to place the burden on Western to precisely identify which policies covered the payments at issue and the reason those payments were made. *See* Dkt. #100 at 4 (Arguing that Western has not admitted the insurance policies into evidence nor offered testimony "as to what policy and on what basis the payments were made."). The Court declines to impose such a high burden on Western, particularly given Vigor's concession earlier in this case that the Towing Agreement's insurance provisions "are not entirely clear." Dkt. #47 at 19. Section 8.B requires that Vigor procure protection & indemnity ("P & I") insurance as well as pollution and environmental liability insurance, including coverage for damages, cleanup and restoration costs. Dkt. #40-1 at 6. Based on a plain reading of these terms, the payments made by Vigor's insurers plausibly fall into either category.

Vigor's arguments that the required insurances do not apply to its damages are unpersuasive. As an initial matter, Vigor makes no effort to address the pollution and environmental liability clause, which would conceivably cover costs to survey the wreckage site

ORDER RE: PARTIES' POST-TRIAL BRIEFING - 8

as those relate to "cleanup and restoration costs." Dkt. #40-1 at 6. Regarding its argument that P & I insurance is inapplicable here, Vigor merely repeats its argument raised at summary judgment that P & I insurance "does not extend coverage beyond the subject matter of the policy itself" and instead "covers the named insured against certain enumerated losses or liabilities incurred 'as owner' of vessels listed for coverage under that policy." Dkt. #47 at 17 (citing *Graham v. Milky Way Barges*, 590 F. Supp. 721, 729 – 31 (E.D. La. 1984), *aff'd in part, rev'd in part sub nom. Graham v. Milky Way Barge, Inc.*, 824 F.2d 376 (5th Cir. 1987)). However, the issue before the Court at summary judgment was whether Section 8 required Vigor to indemnify Western for its damages as a result of Western's maritime negligence. Noting the plain language of Section 8.C and Western's sparse briefing of the issue, the Court narrowly construed the indemnity provision "such that Vigor is barred from recouping loss of the Drydock, but not from recouping costs incurred as a result of Western's negligence injury to third parties." Dkt. #77 at 26. Here, however, the issue is whether Vigor procured an insurance policy for Western's benefit pursuant to the terms of the Towing Agreement. Under a P & I policy, Vigor was covered as owner of the Drydock. To that end, whether that policy also covered Western is inapposite.

Finally, Vigor relies extensively on Ninth Circuit case *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525 (9th Cir. 1962), for the proposition that the collateral source rule applies here. However, the facts at issue in *Gypsum* are readily distinguishable from the instant case. *Gypsum* addressed payments to an injured seaman under the California Unemployment Compensation Disability Act, which the Ninth Circuit concluded were "privately procured benefits" wholly independent of the shipowner such that the collateral source rule applied. *Id.* at 534–37. As stated above, the Court has no basis upon which it may conclude that Vigor's payments were "privately procured," as opposed to payments made pursuant to insurance policies that Vigor was required to procure under the Towing Agreement.

ORDER RE: PARTIES' POST-TRIAL BRIEFING - 9

For these reasons, the Court finds that payments by Vigor's insurers do not comprise benefits from a wholly independent source for which Vigor had the foresight to arrange. *Johnson*, 544 F.3d at 304–05. On the contrary, given the plain language of the required insurances provision under Section 8.B of the Towing Agreement and the undisputed evidence that Vigor was reimbursed by its insurers for certain costs arising from the Drydock's sinking in the Marine Sanctuary, the Court concludes that the collateral source rule does not apply here. Accordingly, to the extent Vigor has been paid for its loss by its insurers, Vigor cannot now collect from Western. *Dillingham Tug*, 707 F.2d at 1091. Given that Vigor may still recover the damages it incurred that were not covered by its insurance policies, Western's Motion for Judgment, Dkt. #99, is DENIED.

## IV.  CONCLUSION

Having reviewed Western's Motion, Vigor's Response, Western's Reply, the exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff Western's Motion for Judgment, Dkt. #99, is DENIED. Furthermore, to the extent Vigor has been paid for its loss by its insurers, the Court finds that Vigor cannot now collect from Western.

DATED this 13th day of October, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE