UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTERN TOWBOAT COMPANY,<br><br>                  Plaintiff–Counterclaim Defendant,<br><br>                v.<br><br>VIGOR MARINE, LLC,<br><br>                  Defendant–Counterclaim Plaintiff. | Case No. C20-416-RSM<br><br>ORDER RE MOTIONS FOR ATTORNEY FEES |

## I.    INTRODUCTION

This matter comes before the Court on: (1) Plaintiff Western Towboat Company ("Western")'s Motion for Attorney Fees (Dkt. #120); and (2) Defendant Vigor Marine, LLC ("Vigor")'s Motion for Attorney Fees (Dkt. #117). These competing motions follow a 6-day bench trial and Judgment by this Court dismissing Western's breach of contract claim with prejudice and awarding Vigor $40,000 in damages on its counterclaim for maritime negligence, plus pre-judgment interest in the amount of $576.08. Dkts. #91, #92, #93, #94, #95, #96, #109, #115. Having reviewed the Motions, opposition briefs (Dkts. #121, #126), Replies (Dkts. #122, #127), and all supporting materials, the Court rules as follows:

(1) The Court DENIES Western's Motion for Attorney Fees; and

ORDER - 1

(2) The Court GRANTS Vigor's Motion for Attorney Fees.

## II.    BACKGROUND[1]

This case arose out of the sinking of the YFD-70 Drydock, approximately .92 nautical miles inside the Monterey Bay Marine Sanctuary on October 26, 2016. Dkt. #42-19 at 12; Dkt. #42-23 at 3. Vigor owns and operates shipyards that utilize drydocks. Dkt. #75 at 3. Western owns and operates tugboats, including the OCEAN RANGER. On April 14, 2016, Vigor sold a decommissioned YFD-70 Drydock (hereinafter, the "Drydock" or "YFD-70") to Amaya Curiel Corporation ("Amaya Curiel"). Dkt. #113 at 2.

On October 4, 2016, Western and Vigor entered into an agreement ("the Tow Agreement") providing that Western tow the Drydock from Seattle to Amaya Curiel's shipyard in Ensenada, Mexico. *Id.* The Tow Agreement stated that Vigor would pay a lump sum hire of $142,800 in addition to fuel charges. *Id.* (citing Dkt. #75 at 3-4). The Tow Agreement also required Vigor to "use due diligence to tender the [Drydock] in a seaworthy condition." *Id.* (citing Dkt. #75 at 3–4).

On October 17, 2016, the tow commenced from Seattle with Western's tug OCEAN RANGER towing the Drydock. *Id.* at 3. By early morning of October 26, 2016, the Drydock was about .92 miles inside the border of the Monterey Bay Marine Sanctuary ("the Marine Sanctuary"), at which point the OCEAN RANGER released the Drydock and the Drydock sank. *Id.*

In a letter dated January 19, 2021, the U.S. National Oceanic and Atmospheric Administration ("NOAA") advised Vigor, Western, and Amaya Curiel of their potential liability under the National Marine Sanctuaries Act ("NMSA") for damages arising from the Drydock's

---

[1] For the sake of brevity and convenience, the Court incorporates by reference its factual findings from trial. *See* Dkt. #113.

ORDER - 2

sinking in the Marine Sanctuary and invited them to "work cooperatively" with NOAA to complete an injury assessment, develop restoration actions, and assist with restoring injured sanctuary resources. *Id.* (citing Dkt. # 40-13 at 4). In response to NOAA's investigation, Vigor chartered a research vessel and a Remote Operated Vehicle to survey the ocean floor to confirm the location of the Drydock. *Id.* (citing Dkt. #75 at 5).

Western filed this action against Vigor on March 16, 2020, alleging breach of maritime contract to recover the $187,462.01 Vigor owed Western for its tug services under the Tow Agreement. Dkt. #1. Western also sought a declaratory judgment that Western was not responsible for the sinking of the Drydock in the Marine Sanctuary, thereby exculpating it from liability to the United States in any forthcoming enforcement action under the NMSA. *Id.* at ¶¶ 24-26. Vigor counterclaimed for breach of maritime contract based on Western's alleged failure to render reasonable assistance in the event the Drydock became "disabled . . . or otherwise unable to continue the voyage," causing Vigor to incur costs to cooperate with NOAA and creating potential liability to the United States under the NMSA. Dkt. #15 at ¶¶ 36-38. Vigor also counterclaimed for general maritime negligence based on Western's failure to exercise reasonable care in towing the sinking drydock into the Marine Sanctuary and for unjust enrichment based on the costs Vigor expended to cooperate with NOAA. *Id.* at ¶¶ 33-35, 40-45.

On June 21, 2021, this Court concluded as a matter of law that Western failed to exercise prudent seamanship by releasing the Drydock inside the Monterey Bay National Marine Sanctuary ("Marine Sanctuary"). Accordingly, the Court granted summary judgment on Western's counterclaim for maritime negligence. Dkt. #77 at 38. The Court likewise concluded that to the extent parties sought preemptive relief from liability to the United States under the National Marine Sanctuaries Act ("NMSA"), such claims were properly dismissed for lack of

ORDER - 3

subject matter jurisdiction. *Id.* at 16. Furthermore, in its Order on the parties' post-trial briefing, the Court concluded that Vigor cannot collect from Western those costs already reimbursed by Vigor's insurers. Dkt. #108 at 10.

Between June 28 and July 7, 2021, the Court conducted a bench trial on the parties' crossclaims for breach of contract under the Tow Agreement and the question of Vigor's comparative negligence with respect to the Drydock's sinking. Dkts. #91–94, #96. On October 27, 2021, the parties presented their oral arguments. Dkt. #109. On December 16, 2021, the Court issued its Bench Order, Findings of Fact, and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a). Dkt. #113. On Western's breach of contract claim, the Court found that Western could not recover the lump sum hire owed under the Tow Agreement due to its negligence contributing to the Drydock's sinking. *Id.* at 30–33. On Vigor's breach of contract counterclaim, the Court found that Western did not breach the Tow Agreement for failure to render reasonable assistance to the Tow when it developed a list. *Id.* at 33–34. Finally, on Vigor's negligence counterclaim, the Court limited Vigor's recovery by 60% to account for its contribution of fault and thus awarded Vigor $40,000 in damages of the $100,000 Vigor sustained as a result of the Drydock's sinking inside the Marine Sanctuary. *Id.* at 34–35. On January 7, 2022, the Court entered a Judgment reflecting the same. Dkt. #115.

Both parties now bring competing Motions for Attorney Fees. Dkts. #117, 120. Vigor moves, pursuant to Fed. R. Civ. P. 54(d)(2), for an order declaring that it is the substantially prevailing party in the litigation and is entitled to recover its attorney's fees. Dkt. #117 at 1. Western also moves pursuant to Fed. R. Civ. P. 54(d)(2), for an order declaring that Western is the substantially prevailing party in this litigation and that this Court therefore award Western its reasonable attorneys' fees. Dkt. #120 at 1.

ORDER - 4

### III.   DISCUSSION

Washington law generally provides for an award of attorney's fees when authorized by contract, a statute, or a recognized ground of equity. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839 (2004). Whether a specific statute, contractual provision, or recognized ground in equity authorizes an award of fees is a question of law. *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126 (1993).

Paragraph 15 of the Tow Agreement is entitled APPLICABLE LAW AND JURISDICTION and provides as follows:

> This agreement shall be governed by the general maritime law of the United States or by the laws of the State of Washington in the event there is no applicable general maritime rule of law. The parties submit to the exclusive personal and subject matter jurisdiction of the courts located in Seattle, Washington with respect to any litigation arising out of this agreement, ***with the substantially prevailing party entitled to recover its reasonable legal fees and costs***.

Dkt. # 40-1 ¶ 15 (emphasis added).

The Tow Agreement does not specifically define the term "prevailing party."[2] Washington courts have defined a prevailing party as "one who receives an affirmative judgment in his or her favor." *Nat. Surety Corp. v. Cadet Mfg. Co.*, 132 Fed.Appx. 711, 712 (9th Cir. 2005) (citing *Riss v. Angel*, 131 Wn.2d 612, 633 (1997)). When neither party wholly prevails, the Court will look to which party "substantially prevailed." *Northwestern Mut. Life Ins. Co. v. Koch*, No. C08-5394BHS, 2010 WL 51727, at *3 (W.D. Wash. Feb. 10, 2010) (citing *Hertz v. Riebe*, 86 Wn. App. 102, 105 (1997)). "Determining the 'substantially prevailing party ... depends upon the extent of relief afforded the parties.'" *Koch*, 2010 WL 51727, at *3 (quoting *Riss*, 131 Wn.2d

---

[2] In its Motion, Western cites Paragraph 1 of the Tow Agreement. Dkt. #120 at 5 – 12 (citing Dkt. #40-1 ¶ 1). This provision relates to the lump sum hire obligation and, by its plain language, does not have any bearing on the definition of "prevailing party" in Paragraph 15.

ORDER - 5

at 633). When both parties prevail on a major issue, neither party is a prevailing party. *Hertz*, 86 Wn. App at 105.

Western asserts that it prevailed on the "major issue" in the litigation, specifically which entity was "most responsible for the sinking of the Drydock" because the Court found Vigor 60% comparatively negligent on its maritime negligence claim. Dkt. #120 at 7. Vigor argues it substantially prevailed because Western took nothing by way of its claims while Vigor received an affirmative judgment of $40,000 in its favor. Dkt. #117 at 3–4.

A party need not recover its entire claim in order to be considered the prevailing party." *Silverdale*, 36 Wn. App. at 774. Instead, "[t]he determination as to who substantially prevails turns on the substance of the relief which is accorded the parties." *Knight v. City of Yelm*, 173 Wn.2d 325, 347 (2011) (citing *Marine Enters., Inc. v. Sec. Pac. Trading Corp.*, 50 Wn. App. 768, 772 (1988)). Vigor argues that here, "the substance of the relief this Court accorded to the parties is that Vigor owes Western nothing and Western must contribute to Vigor's cooperation costs." Dkt. #126 at 8. The Court agrees with Vigor. In this case, Vigor defeated all of Western's affirmative claims for relief and received a significant judgment in its favor. Western did not prevail on any claim, "except in the sense that damages were not as high as prayed for. A party need not recover its entire claim in order to be considered the prevailing party." *Silverdale*, 36 Wn. App. at 774. Thus, Vigor is the substantially prevailing party and is entitled to recover its reasonable attorney's fees under the Tow Agreement.

## CONCLUSION

Accordingly, having reviewed the relevant briefing, and the remainder of the record, the Court finds and ORDERS that Plaintiff Western Towboat Company's Motion for Attorney Fees

ORDER - 6

(Dkt. #120) is DENIED and Defendant Vigor Marine, LLC's Motion for Attorney Fees (Dkt. #117) is GRANTED.

Vigor is directed to file evidence substantiating the amount and reasonableness of its requested fees within 30 days of this Order.

DATED this 12th day of May, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 7