UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTERN TOWBOAT COMPANY,<br><br>  Plaintiff,<br><br>  v.<br><br>VIGOR MARINE, LLC,<br><br>  Defendant. | Case No. C20-416-RSM<br><br>ORDER GRANTING IN PART DEFEDANT'S MOTION FOR ATTORNEY FEES AND COSTS AND DENYING PLAINTIFF'S MOTION FOR POST-JUDGMENT DISCOVERY |

## I. INTRODUCTION

This matter comes before the court on Defendant Vigor Marine, LLC ("Vigor")'s Motion for Attorney Fees and Costs, Dkt. #134. Plaintiff Western Towboat Company ("Western") opposes the Motion. Dkt. #136. If the Court grants Vigor's attorney fees request, however, Western has filed and asks the Court to consider its "Motion to Permit Post-Judgment Discovery," Dkt. #139. For the reasons stated below, the Court GRANTS IN PART Vigor's Motion and DENIES Western's Motion.

## II. BACKGROUND

This case arose out of the sinking of the YFD-70 Drydock ("drydock"), approximately .92 nautical miles inside the Monterey Bay Marine Sanctuary on October 26, 2016. Dkt. #42-19

ORDER RE: ATTORNEY FEES AND DISCOVERY - 1

at 12; Dkt. #42-23 at 3. Vigor owns and operates shipyards that utilize drydocks; Western owns and operates tugboats, including the OCEAN RANGER. Dkt. #75 at 3. On April 14 ,206, Vigor sold a decommissioned drydock to Amaya Curiel Corporation ("Amaya Curiel"). Dkt. #113 at 2.

On October 4, 2016, Western and Vigor entered into an agreement ("the Tow Agreement") providing that Western tow the Drydock from Seattle to Amaya Curiel's shipyard in Ensenada, Mexico. *Id*. The Tow Agreement stated that Vigor would pay a lump sum hire of $142,800 in additional to fuel charges. *Id*. The Tow Agreement also required Vigor to "use due diligence to tender the [drydock] in a seaworthy condition." *Id*.

On October 7, 2016, the tow commenced from Seattle with Western's tug OCEAN RANGER towing the drydock. *Id*. at 3. By early morning of October 26, 2016, the drydock was about .92 mils inside the border of the Monterey Bay Marine Sanctuary, at which point the OCEAN RANGER released the drydock, and the drydock sank. *Id*.

In a letter dated January 19, 2021, the U.S. National Oceanic and Atmospheric Administration ("NOAA") advised Vigor, Western, and Amaya Curiel of their potential liability under the National Marine Sanctuaries Act ("NMSA") for damages arising from the drydock's sinking in the Marine Sanctuary and invited them to "work cooperatively" with NOAA to complete an injury assessment, develop restoration actions, and assist with restoring injured sanctuary resources. *Id*. In response to NOAA's investigation, Vigor chartered a research vessel and a Remote Operated Vehicle to survey the ocean floor to confirm the drydock's location. *Id*.

Western filed this action against Vigor on March 16, 2020, alleging breach of maritime contract to recover the $187,462.01 Vigor owed Western for its tug services under the Tow Agreement. Dkt. #1. Western also sought a declaratory judgment that Western was not responsible for the sinking of the drydock in the Marine Sanctuary, thereby exculpating it from

liability to the United States in any forthcoming enforcement action under the NMSA. *Id.* at ¶¶ 24-26. Vigor counterclaimed for breach of maritime contract based on Western's alleged failure to render reasonable assistance in the event the drydock became "disabled . . . or otherwise unable to continue the voyage," causing Vigor to incur costs to cooperate with NOAA and creating potential liability to the United States under the NMSA. Dkt. #15 at ¶¶ 26-38. Vigor also counterclaimed for general maritime negligence based on Western's failure to exercise reasonable care in towing the sinking drydock into the Marine Sanctuary and for unjust enrichment on the costs Vigor expended to cooperate with NOAA. *Id.* at ¶¶ 33-35, 40-45.

On June 21, 2021, this Court concluded as a matter of law that Western failed to exercise prudent seamanship by releasing the drydock inside the Marine Sanctuary. Dkt. #77. Accordingly, the Court granted summary judgment on Western's counterclaim for maritime negligence. *Id*. at 38. The Court likewise concluded that, to the extent the parties sought preemptive relief from liability to the United States under the NMSA, such claims were properly dismissed for lack of subject matter jurisdiction. *Id*. Furthermore, in its Order on the parties' post-trial briefing, the Court concluded that Vigor could not collect from Western those costs already reimbursed by Vigor's insurers. Dkt. #108 at 10.

Between June 28 and July 7, 2021, the Court conducted a bench trial on the parties' crossclaims for breach of contract under the Tow Agreement and the question of Vigor's comparative negligence with respect to the drydock's sinking. Dkts. #91-94, #96. On October 27, 2021, the parties presented their oral arguments. Dkt. #109. On December 16, 2021, the Court issued its Bench Order, Findings of Fact, and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a). Dkt. #113. On Western's breach of contract claim, the Court found that Western could not recover the lump sum hire owed under the Tow Agreement due to its negligence contributing to the drydock's sinking. *Id*. at 30-33. On Vigor's breach of contract counterclaim, the Court

found that Western did not breach the Tow Agreement for failure to render reasonable assistance to the Tow when it developed a list. *Id*. at 33-34. Finally, on Vigor's negligence counterclaim, the Court limited Vigor's recovery by 60% to account for its contribution of fault, thus awarding Vigor $40,000 in damages of the $100,000 Vigor sustained because of the drydock's sinking in the Marine Sanctuary. *Id*. at 34-35.

On January 13, 2022, Vigor filed a Motion for Attorney Fees. Dkt. #117. On January 21, 2022, Western filed its own Motion for Attorney Fees. Dkt. #120. On May 12, 2023, this Court granted Vigor's Motion for Attorney Fees and denied Western's Motion, concluding that Vigor was the substantially prevailing party and entitled to recover its reasonable attorney fees under the Tow Agreement. Dkt. #133.

On June 1, 2023, Vigor again filed a Motion for Attorney Fees and Costs, requesting $1,461,393.90 in attorney fees and $111,063.13 in costs. Dkt. #134. In its Response, Western argues that the Court should deny Vigor's Motion. Dkt. 136. However, if the Court grants Vigor's Motion, Western has also filed a "Motion to Permit Post-Judgment Discovery" to clarify Vigor's submissions, or, if the Court denies discovery, requests an evidentiary hearing instead. *Id*. at 14-15; Dkt. #139.

### III. DISCUSSION

Washington law generally provides for an award of attorney's fees when authorized by contract, statute, or a recognized ground of equity. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839 (2004). Whether a specific statute, contractual provision, or recognized ground in equity authorizes an award of fees is a question of law. *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126 (1993).

Vigor argues that the requested fees and costs are reasonable due to the complexity of the case, especially with the potential NOAA liability that was not dismissed until just before trial.

ORDER RE: ATTORNEY FEES AND DISCOVERY - 4

Dkt. #134 at 3. Furthermore, Vigor states that it already "excluded over $190,000.00 in time/legal fees that were spent/incurred cooperating with NOAA or preparing for and negotiating resolution of Vigor's potential liability to the Federal Government arising out of the drydock's sinking." *Id*.

Western argues that there are no fees to award because Vigor's underwriters already paid these fees, and this Court should determine that Vigor cannot recover fees paid by insurance just as the Court ruled concerning damages and costs. Dkt. #136 at 1-2. Western further argues that these fees are "wildly disproportionate to the scope of litigation" because Vigor "overstaffed" what was "only a $187,000 contract claim and a Vigor counterclaim[.]" *Id*. at 7-8. Western also argues that Vigor failed to segregate its claims, charged unreasonable costs, and is wrongfully attempting to collect fees that its attorneys wrote-off. *Id*. at 10-14. The Court addresses Western's arguments in turn below.

**A. Fees Paid by Insurance**

Western first argues that there are no fees to award Vigor because "Vigor's underwriters have paid everything above $100,000." *Id*. at 1-2. Concerning damages, this Court determined that Vigor's insurance had paid for damages over Vigor's $100,000 deductible, and because the insurance procured was agreed upon by both parties, thus mutually beneficial, Vigor was only entitled to its deductible less its 60% negligence contribution. Dkt. #115. Western argues that Vigor's attorney fees and costs were already accounted for in these damages. Dkt. #136 at 1-2. Vigor contends that the Tow Agreement's clause limiting recoverable damages to the insurance deductible did not limit a separate clause allowing for the prevailing party to recover attorney fees and costs. Dkt. #134 at 4.

Many courts have held that where insurance policies did not define "damages" or "losses" or were otherwise ambiguous, a reasonable person would consider damages an insured is required

ORDER RE: ATTORNEY FEES AND DISCOVERY - 5

to pay in a civil action to include attorney fees, thus an insurer would have to cover the fees. *See City of Ypsilanti v. Appalachian Ins. Co.*, 547 F. Supp. 823 (E.D. Mich. 1982); *St. Paul Fire and Marine Ins. Co. v. Hebert Const., Inc.*, 450 F. Supp. 2d 1214, 1234-35 (W.D. Wash. 2006); *Sokolowski ex rel. M.M.&P. Pension Plan v. Aetna Life & Cas. Co.*, 670 F. Supp. 1199, 1210 (S.D.N.Y. 1987). However, these cases addressed ambiguities in insurance contracts, which courts view in favor of the insured, and insurance companies can contractually limit coverage if they so choose, including from covering attorney fees. *See Sullivan County, Tenn. V. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir. 1991) (holding that an attorneys' fees award is not a sum insured is legally obligated to pay as damages because of the insurance policy's specific limitations); *see also Board of Cty. Com'rs, etc. v. Guarantee Ins. Co.*, 90 F.R.D. 405, 407 (D. Colo. 1981) (holding that where the policy defined damages, it was not unambiguous that the policy did not cover other claims).

Clause 8 of the Tow Agreement provided that Western and Vigor mutually contracted and considered insurance, which the parties would look to for covering damages. Dkt. #40-1 at 4. This is why the Court found that payments by Vigor's insurers did not comprise benefits from a wholly independent source solely arranged for by Vigor, thus concluding that the collateral source rule applied to Vigor's damages. Dkt. #108 at 10. Vigor and Western were required to procure insurance per the Tow Agreement, which paid for the wreckage site survey or directly reimbursed Vigor. *Id*. at 8. However, the Tow Agreement provided in a completely different clause, Clause 15, that "the substantially prevailing party [would be] entitled to recover its reasonable legal fees and costs." Dkt. #40-1 at 7. Looking within the four corners of the Tow Agreement, Clause 15 is several pages down from Clause 8 and in no way appears to be limited by Clause 8. Dkt. #40-1. Thus, it is no major leap in logic to conclude that Western and Vigor contemplated that, though a party's damages would be limited by insurance, deductibles, and

degree of fault (all provided for in Clause 8), the prevailing party would be entitled to recover attorney fees without a supposed windfall. *See gen. Abendroth v. Benjamin Ryan Cmtys.* LLC, 2022 Wl 277713 at *7 (Jan. 31, 2022). Just as insurance companies can limit coverage to not include attorney's fees, Western could have included attorney's fees and costs under Clause 8 and limited recovery to what insurance did not pay. Western's own-provided Tow Agreement clearly contemplates both parties being required to procure insurance, limiting damage recovery, and clearly and separately provides that the prevailing party at court may obtain attorney fees and costs. Accordingly, the Court concludes that Clause 15 of the Tow Agreement allows for Vigor's attorney fees and costs recovery and is not subject to the same limitation as damages provided by Clause 8.

Western further argues that Vigor should not be awarded attorney fees due to insurance paying the fees because the Tow Agreement provided that "the substantially prevailing party [would be] entitled to recover *its* reasonable legal fees and costs." Dkt. #40-1 at 7 (emphasis added). Western argues that "its" refers to Vigor recovering fees, not underwriters, and Vigor was already provided these fees by insurance. Dkts. #136 at 4-7, 13, #152. Western also argues that Vigor attempts to recover attorney fees that were "write-offs" from Schwabe and are not recoverable.

This Court is unconvinced by any of these arguments. The parties' Tow Agreement provided that the prevailing party (here, Vigor) could recover reasonable attorney fees and costs with no limitations as to what was paid by underwriters. Dkt. #40-1 at 7. "Furthermore, concerning whether [Vigor] incurred the expenses itself is irrelevant to our resolution of this issue, as evidenced by cases which recognize that attorney fees may be awarded to a party who received the assistance of pro bono counsel." *Frank Coluccio Constr. Co., Inc. v. King County*, 136 Wn. App. 751, 780 (2007) (citing Blair v. Wash. State Univ., 108 Wn.2d 558, 570-71

ORDER RE: ATTORNEY FEES AND DISCOVERY - 7

(1987)). Concerning "write-offs," when asked by this Court during oral argument on March 22, 2024, if Vigor was claiming the fees listed in document A2 of $196,937.00 for 308.50 hours of work, Vigor's attorney said no. Dkt. #152. However, Vigor's requested attorney fees of $1,461,393.90 includes these fees. See Dkts. #134, #140. Therefore, these "write-off" fees are not part of this discussion, and the Court accordingly deducts these fees from the total award.

**B. Reasonableness of Fees**

District courts have broad discretion to determine the reasonableness of fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). To make this determination, courts determine the "lodestar amount," which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The lodestar figure is presumptively a reasonable fee award. *Id.* at 977. The court may adjust the lodestar figure up or down based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975). The court need not consider the *Kerr* factors, however, unless necessary to support the reasonableness of the fee award. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002).[1] In the Ninth Circuit, "the determination of a reasonable hourly rate 'is not made by reference to the rates actually charged the prevailing party.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000)). "Rather, billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Id.* (internal quotation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly

---

[1] Additionally, numerous courts have subsequently held that the bulk of these factors are subsumed in the lodestar calculation. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 898-900, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).

ORDER RE: ATTORNEY FEES AND DISCOVERY - 8

those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours…" *Welch*, 480 F.3d at 945-46 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). It is reasonable for a district court to conclude that the party seeking attorney's fees fails to carry its burden of documenting the hours expended when that party engages in "block billing" because block billing makes it more difficult to determine how much time was spent on particular activities. *Welch*, 480 F.3d at 948. The district court "should exclude any hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).

The Court finds that the hourly rates for Vigor's attorneys are reasonable based on the experience, skill, and education of each attorney and paralegal. See Dkts. #135, #141, #142. Western does not oppose the hourly rates. *See gen*. Dkt. #136. Western contends that Vigor's claimed fees are "wildly disproportionate" because this case was "only a $187,000 contract claim" that Vigor "overwork[ed] and overstaff[ed]" with 7 individuals, including 5 Schwabe shareholders, as opposed to Western's 2 attorneys. *Id*. at 7-8.

However, as mentioned before, the Court did not dismiss the issue of potential liability under NMSA until less than a week from trial. *See* Dkt. #77. Until then, this "specter of astronomical damages . . . [because of] future liability to the United States under the NMSA" was a live issue. Dkt. #77 at 11-12. Given the complexity of the issues right up until trial, the Court concludes that Vigor's reported hours and fees are reasonable.

The Court also disagrees with Western's argument that Vigor cannot collect fees from before March 16, 2020, when Western filed its Complaint against Vigor. *See* Dkt. #136 at 10. Western attempts to use Clause 15 to enforce this limit, stating that "[t]he parties submit . . . with

ORDER RE: ATTORNEY FEES AND DISCOVERY - 9

respect to any litigation arising out of this agreement, with the substantially prevailing party entitled to recover its reasonable legal fees and cost." Dkt. #40-1 at 7. Western takes this "with respect to" provision out of context. *Id*. Clause 15 actually states that the parties submit to the jurisdiction of courts in Seattle, Washington "with respect to any litigation arising out of this agreement[.]" *Id*. The "with respect to" limitation refers to court jurisdiction, not the collection of fees. *Id*. Vigor claims attorney fees from February 13, 2017, "after Western demanded that Vigor defend and indemnify it for any and all proceedings related to the sinking of the Drydock—the same claims that Western filed in this Court." Dkt. #140 at 6. The Court agrees with Vigor that these fees were incurred in connection to the litigation in this Court and are recoverable under the Tow Agreement.

The Court also agrees with Vigor that a $204.77 charge to the Washington Athletic Club while the case was on appeal, a $121 dinner charge during trial, and $5,050 in fees for preparing the notice of appeal documents should be removed, as conceded by Vigor during oral argument. Dkts. #135, #152.

Western also argues that Vigor has failed to segregate fees related to NOAA liability after this Court removed that issue and appellate-related fees. Dkt. #136 at 13. Vigor claims that it has already segregated and removed over $190,000 in fees. Dkts. #134 at 3-4. Upon independent review, the Court finds evidence of unclear NOAA-related billings after the Court's judgment separating this issue on June 21, 2021, and appellate related work other than those already conceded, as well as some evidence of block billing and redundant work. *See gen*. Dkt. #135. Accordingly, the Court will impose a 10% reduction on Vigor's award. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112-13 (9th Cir. 2008) (holding that a 10% haircut without specific explanation is not error).

ORDER RE: ATTORNEY FEES AND DISCOVERY - 10

The Court also finds that Vigor's litigation-related expert fees of $24,000.000 to Heger Drydock and $28,001.50 to K&L Gates are reasonable and awardable under the Tow Agreement. See Dkt. #135-4. Though Clause 8 contemplated limiting any losses or damages not covered by insurance by degree of fault, the Court has already concluded that the limitations of Clause 8 do not apply to the later and separate provision allowing for attorney fees and costs concerning litigation under Clause 15. Therefore, the Court concludes that these fees are properly awarded to Vigor.

Finally, the Court finds that a further 20% reduction is appropriate due to the disproportionality between the fee request and damages awarded at trial. In Washington, a fee award may be reduced where it is disproportionate to the trial results. *See e.g., Singleton v. Frost*, 108 Wn.2d 723, 731 (1987). Here, Vigor's net award at trial was its $100,000 insurance deductible less $60,000 for Vigor's comparative fault of 60%, thus a $40,000 award. *See* Dkts. #113, #115. The Court finds that Vigor's attorney fees and costs are disproportionate to the results obtained, especially considering Vigor's attributable negligence. Therefore, the Court finds a 20% discount factor is appropriate in order to balance the fees with the results obtained in this case.

In sum, the Court concludes that Vigor's requested attorney fees and costs of $1,572,457.03 shall be reduced by the following:

1) The conceded fees from document A2 of $196,937.00, the $204.77 charge to the Washington Athletic Club, the $121 dinner charge, and $5,050 in fees for preparing the notice of appeal documents (leaving a total of $1,370,144.26 in requested fees);

2) A 10% reduction due to lack of clarity, block billing, and unproperly requested fees ($137,014.43 from the total requested amount);

3) A 20% reduction for disproportionality ($274,028.85 from the total requested amount).

This amounts to a $959,100.98 award to Vigor for attorney fees and costs.

### C. Western's Motion for Post-Judgment Discovery

Western filed a Motion for Post-Judgment Discovery to allow for limited, additional discovery for sixty days related to Vigor's attorney fees. Dkt. #139. In its Motion, Western includes a list of seven questions pertaining to what documents and information it seeks in post-judgment discovery to answer said questions. *Id*. at 5. Western's questions involve if insurance paid Vigor's fees, why Vigor paid for fees to K&L Gates and Heger Drydock, and if the awarded deductible at trial included attorney fees. *Id*. The Court concludes that, given its foregoing reasoning for reducing and awarding Vigor's request, it considered and accounted for these questions in awarding Vigor's fees, thus there is no need for further discovery. Therefore, the Court denies Western's Motion.

## IV. CONCLUSION

For the foregoing reasons, Defendant Vigor's Motion for Attorney Fees and Costs, Dkt. #134, is GRANTED IN PART. Defendant Vigor is awarded attorney fees and costs in the amount of $959,100.98 for substantially prevailing against Defendant Western. Plaintiff Western's Motion for Post-Judgment Discovery, Dkt. #139, is DENIED.

DATED this 5th day of April, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE